FILED

2006 Mar-28  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

MAMIE LOU SHACKELFORD,        ]
                              ]
        Plaintiff,            ]
                              ]
    vs.                       ]    CV-05-CO-00364-J
                              ]
HARTFORD LIFE AND ACCIDENT    ]
INSURANCE COMPANY,            ]
                              ]
        Defendant.            ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant Hartford Life and Accident

Insurance Company's ("Hartford") motion for summary judgment, which was

filed on December 15, 2005.  (Doc. 20.)  Plaintiff Mamie Lou Shackelford

filed suit against Hartford alleging that its decision to discontinue her short-

term disability benefits was wrongful, and she seeks relief pursuant to ERISA

§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[1]  (Docs. 1 & 19.)  The issues raised

---

[1]On April 18, 2005, this Court dismissed Counts Two, Three, Four, and Five of
Plaintiff's Complaint on the grounds that Plaintiff's state law claims were completely
preempted by ERISA.  (Doc. 14.)

in Defendant's motion are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion is due to be granted in all respects.

II.    Facts.[2]

Plaintiff was employed by Best Glove Manufacturing, Inc. ("Best Glove") from May 26, 1998, through October 11, 2004, as a "finisher" - a position that requires the packing of hand gloves.  (Doc. 19, p. 2.)  Best Glove sponsored and maintained a Group Short-Term Disability Plan (the "Plan") for eligible employees.  *Id.*  The Plan is insured by Hartford pursuant to their group policy as issued to the Trustee of the Manufacturing Industry Group Voluntary Life and Disability Insurance Trust on behalf of Best Manufacturing.  *Id.* (*See also* Doc. 21, p. 2.)  The policy vests Hartford with full discretionary authority to construe and interpret the terms of the policy and to determine eligibility for benefits thereunder as evidenced by the

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, the parties' Joint Status Report, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

following language: "We [Hartford] have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." *Id*. (*See also* Doc. 22, Exhibit A, Attachment 1, p. 12.)

According to the Plan, weekly benefits are payable for short-term disability "[i]f, while covered under this Benefit, you become Totally Disabled, and furnish proof to us that you remain Totally Disabled." (Doc. 22, Exhibit A, Attachment 1, p. 8.) Hartford expressly reserves the right to determine if a claimant's "proof of loss" is satisfactory. *Id*. at 12. Under the Plan, "Totally Disabled" means that you are prevented from performing the essential duties of your occupation, and as a result are earning less than twenty percent of your pre-disability weekly earnings by: (1) accidental bodily injury; (2) sickness; (3) mental illness; (4) substance abuse; or (5) pregnancy. *Id*. at 7. Under the Plan, it is up to the claimant to provide on-going proof of disability or benefits will be terminated. *Id*. at 5. Benefit payments will cease on the first to occur of: (1) the date you are no longer disabled; (2) the date you fail to furnish proof that you continue to be disabled; (3) the date you refuse to be examined, if Hartford requires an

examination; (4) the last day benefits are payable according to the maximum duration of benefits shown in the schedule of insurance; or (5) the date the claimant dies. *Id*.

Plaintiff contacted Hartford on October 18, 2004, and telephonically submitted a claim for short-term disability benefits. (Doc. 19, p. 3; Doc. 21, p. 4.) On the very same day, pursuant to Plaintiff's request, Hartford sent by facsimile an Attending Physician Statement to Dr. Frederick Brown. (Doc. 19, p. 4; Doc. 21, p. 4.) Hartford was informed that there was no Dr. Brown at the location identified by Plaintiff and that no records for Plaintiff were on file. *Id*. On October 24, 2004, Hartford obtained a statement from Best Glove, in which it reported that Plaintiff was a "finisher," a medium level job requiring the packing of hand gloves, from May 26, 1998, until her final day of work on October 11, 2004. *Id*.

Hartford also sent by facsimile an Attending Physician's Statement to Dr. Martha Joe Christian, a treating physician identified by Plaintiff. (Doc. 19, p. 4; Doc. 21, p.5.) By November 8, 2004, Hartford had not received any records, or notes, from Plaintiff's physician. *Id*. Therefore, Hartford wrote to Plaintiff advising that, because the requested medical information had

not been provided, it "was unable to completely evaluate [her] claim for benefits" and had to close her file. *Id*. Plaintiff was informed in the letter that her claim would be reopened if she provided the necessary information within sixty days. *Id*. On the very same day, Dr. Christian sent a completed Attending Physician's Statement to Hartford. (Doc. 19, p. 5; Doc. 21, p.5.) She diagnosed Plaintiff with osteoarthritis of the right hip and degenerative changes in the lumbar spine and left knee. *Id*. She also stated that the condition was longstanding, that surgery had been recommended, and that Plaintiff was also consulting Dr. Frederick Graham, a rehabilitation physician, and Dr. William Sudduth, an orthopedist. *Id*. According to Dr. Christian's evaluation, Plaintiff could stand for ten to fifteen minutes, engage in limited walking, and sit with occasional breaks required. (Doc. 19, p. 5; Doc. 21, p. 6.) Ms. Shackelford reported to her doctors that the condition resulted in pain that interfered with her daily activities. *Id*. The Attending Physician Statement indicates that Plaintiff first became unable to work due to her impairment in October 2004, and it advised that the time frame for her limitations would depend upon whether she elected to undergo surgery. *Id*.

On November 18, 2004, Hartford wrote to Plaintiff and informed her that payment for her short-term disability claim had been approved through November 10, 2004, and that, if her disability extended beyond the approved date, she "must provide [Hartford] with medical evidence to support an extension of benefits." *Id*.  Plaintiff called Hartford the same day, and she was told that a medical update was necessary in order for it to consider extending the payment of her benefits.  (Doc. 21, p. 6.)  On November 23, 2004, Hartford again advised Plaintiff that a benefit extension could not be considered unless she provided the requested medical information.  *Id*.  The very next day, Hartford again told Plaintiff, during two separate phone calls, that a medical update was required in order to extend her claim beyond November 10, 2004.  *Id*. at 7.  When Plaintiff called Hartford on November 29 to check on the status of her disability check, she was again advised that Hartford "need[ed an] update for ext[ension]."  *Id*.

Finally, on December 7, 2004, Dr. Christian completed and submitted a Statement of Continued Disability on behalf of Plaintiff.  (Doc. 19, p. 6; Doc. 21, p. 7.)  Dr. Christian made the following findings: decreased range

of motion in hips, pain on range of motion, and antalgic gait. *Id.* Her statement also indicated that Plaintiff had undergone a EMG/NCV test with Dr. Michael Ellerbusch and that it was negative for peripheral neuropathy and radiculopathy. *Id.* Dr. Christian stated that Plaintiff should not engage in prolonged standing over five minutes and "limited walking, infrequent as needed to do personal care." *Id.* She estimated that Ms. Shackelford would be able to return to work on January 2, 2005. (Doc. 21; p. 7; Doc. 22, Exhibit A, Attachment 1, p. 89.) Dr. Christian also referred Plaintiff to Dr. Sudduth, the orthopedist. (Doc. 19, p. 6.)

Even though Dr. Christian's notes reflect referrals to Drs. Ellerbusch and Sudduth, the results of the tests, treatment notes, or evaluations performed by these physicians do not appear to have ever been supplied to Hartford by Plaintiff. (Doc. 21, pp. 7-8.) On December 18, 2004, Hartford informed Ms. Shackelford that she was no longer entitled to short-term disability benefits because the information supplied by her treating physician did not support a finding of total disability. (Doc. 22, Exhibit A, Attachment 2, pp. 41-42.) In addition to examining Plaintiff's medical record, Hartford also stated: "Your physician's office has not provided any

medical information from October 18, 2005, to support your total disability at that time.  Your physician's office has not provided any information regarding your current treatment plan or the severity of your condition that would continue to prevent your return to work."  *Id*. at 42.  However, Hartford informed Ms. Shackelford that it would reconsider its decision if she would promptly submit the medical information that it had repeatedly requested.  (Doc. 21, p. 9.)

Plaintiff called Hartford on December 20, 2004, and was informed that she needed to submit medical records from the date that she was first taken off of work to support a claim of total disability from that date.  *Id*. Plaintiff called Hartford again on December 20 and told them that while she was no longer under the care of an orthopedist, she was nevertheless having surgery.  *Id*.  Hartford told her that she needed to submit information from the attending physician who would be performing the surgery.  *Id*.

Dr. Christian's note dated December 21, 2004, states that she: "explained to [Plaintiff] that [she felt] it would be more appropriate for [an orthopedist] to make [a] decision about return to work rather than [primary] care since she is actively under ortho care."  (Doc. 19, p. 8; Doc. 21, p. 10.)

On January 2, 2005, Hartford wrote Plaintiff to advise her that it was again upholding its decision that no further benefits were payable under the terms of the Plan.  *Id*.  The denial letter reiterated that information from Plaintiff's orthopedist was necessary to extend her disability claim.  *Id*. Since Plaintiff's treating physician deferred to the orthopedist regarding Plaintiff's capacity for work, and Plaintiff did not supply any medical information from her orthopedist, Hartford concluded that the medical evidence of record does "not indicate a severity of your condition that would prevent you from performing the essential duties of your occupation beyond November 10, 2004."  (Doc. 22, Exhibit 1, Attachment A, p. 44.) Plaintiff called Hartford again on January 6, 2005, to advise them that she was scheduled to have surgery on her back but that she was unable to have the surgery because she was ill.  (Doc. 21, 11.)  Hartford told Plaintiff that her physician would need to provide medical records to support her total disability until surgery could be performed and explained that "we still need test results to show severity of condition."  *Id*.

Rather than exercising her right to appeal Hartford's decision, Plaintiff commenced this lawsuit on January 3, 2005.  On January 6, 2005, Dr.

Christian submitted a physician's statement advising Hartford that Plaintiff was still under her care and that she would not be able to return to work until January 21, 2005, or "per ortho."  (Doc. 21, p. 11.)  With respect to Plaintiff's prognosis, Dr. Christian again noted that she would "defer to ortho opinion."  *Id.* at 12.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*Id.* at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

Hartford argues that based upon the terms of the Policy and the undisputed evidence that reveals the nature of Ms. Shackelford's claims, summary judgment is due to be granted in its favor.  (Doc. 21, p. 16.) Furthermore, Hartford believes that summary judgment is especially appropriate in ERISA cases, such as the one at bar, where the Court "'must

determine whether the administrator (Hartford) reached a reasonable and impartial decision in light of the evidence with which it was presented . . . as contrasted with the typical summary judgment scenarios, [and thus] it matters not that there may be conflicting evidence concerning the ultimate historical facts which underlie plaintiff's claims.'" *Id*. at 15-16 (quoting *Goodman v. S & A Restaurant Corp.*, 821 F. Supp. 1139, 1143 (S.D. Miss. 1996)).

 A. ERISA Standard of Review.

 "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans . . . and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotations and citations omitted).  However, the Act does not provide a standard for reviewing the decisions of plan administrators or fiduciaries.  *See id*. at 109.  The Eleventh Circuit has construed *Firestone* as establishing three distinct standards for reviewing the decision of plan administrators: "(1) *de novo* where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and

capricious where there is a conflict of interest." *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 992 (11th Cir. 2001) (quoting *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997)). The validity of a claim to benefits by a plaintiff "is likely to turn on the interpretation of terms in the plan at issue." *Firestone*, 489 U.S. at 115. Therefore, the Supreme Court held that a denial of plan benefits that is challenged under § 1132(a)(1)(B) is to be reviewed by the Court under the *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.*

The arbitrary and capricious standard (sometimes referred to as the abuse of discretion standard) remains applicable to cases where the plan documents explicitly grant the claims administrator the discretion to determine eligibility for benefits or construe terms of the plan. *Firestone*, 489 U.S. at 115; *HCA*, 240 F.3d at 992; *Florence Nightingale Nursing Serv., Inc v. Blue Cross & Blue Shield*, 41 F.3d 1476, 1481 (11th Cir. 1995); *Jett v. Blue Cross & Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1990). In *Jett*, the plan vested the administrator with the discretionary authority

to determine eligibility, as well as the ability to construe the plan's terms. *Id*. The plan's booklet stated that Blue Cross & Blue Shield had the "exclusive right to interpret provisions of th[is] Plan, so its decision is conclusive and binding." *Id*. Once the court determines that the arbitrary and capricious standard applies to a denial of ERISA benefits, "the function of the Court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Id*. (citing *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 532 (7th Cir. 1986), *cert. denied*, 479 U.S. 1094 (1987); *Denton v. First National Bank of Waco, Texas*, 765 F.2d 1295, 1304 (5th Cir. 1985); *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985)).

The heightened arbitrary and capricious standard of review is triggered in most cases where an employer both administers and funds a plan. *Williams v. Bellsouth Telecommunications, Inc.*, 373 F.3d 1132, 1135 (11th Cir. 2004). When the administrator of a plan pays benefits out of its own assets, a conflict of interest exists between the administrator's role as a fiduciary and its role as a profit-maker. *See Levinson v. Reliance Standard*

*Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001).   When a beneficiary demonstrates that there is a "substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest." *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566 (11th Cir. 1990). Therefore, "a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense" of the beneficiary in question unless the fiduciary is able to justify the interpretation on the ground of its benefit to the class of all participants in the plan. *Id.* at 1566-1567; *see also HCA,* 240 F.3d at 994-95.   Even after an administrator satisfies this burden, the claimant may still ultimately succeed if he or she can show by other means that the decision was arbitrary and capricious. *Id.*   If the Court finds that the administrator has not shown that its interpretation benefits the class of participants and beneficiaries as a whole, the administrator's interpretation is not entitled to deference. *Id.*

Hartford urges the Court to apply the arbitrary and capricious standard of review because the language of the Plan states that Hartford has "full

discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Doc. 21, pp. 13-14; Doc. 22, Exhibit A, Attachment 1, p. 9.)  It points to the Eleventh Circuit case of *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, in which the Court held that substantially similar language as that contained in the Plan conferred discretionary authority upon the plan's administrators.  Because the Plan confers "full discretion and authority" to determine eligibility and interpret the policy to Hartford, the Court is of the opinion that the arbitrary and capricious, and not *de novo*, standard is applicable in this case.

Plaintiff contends that the Court should go one step further and apply the arbitrary and capricious standard with heightened scrutiny because "[t]here is a serious conflict of interest in regard to Hartford since Hartford insured the plan and administrates the plan." (Doc. 24.)  Plaintiff is correct in her assertion that the facts show that Hartford issued the policy, insured the Plan, and acts as claims administrator for the Plan.  (Doc. 21, p. 2.) However, as will be discussed in more detail in the section below, Hartford's decision is entitled to deference because it is not *de novo* "wrong" in the

first instance, and it is unnecessary for the Court to apply the arbitrary and capricious standard of review.

     B.     Analysis of Hartford's Decision.

In *Williams v. Bellsouth*, 373 F.3d 1132, the Eleventh Circuit set out the multi-step approach that is to be used by the district courts when judicially reviewing virtually all ERISA-plan benefit denials:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Id*. at 1137-1138 (internal citations and footnotes omitted).

Hartford argues that Plaintiff did not meet her burden of establishing that she was entitled to benefits under the Plan.  (Doc. 21, p. 17.)  Applying the *de novo* standard, the Court must determine whether Hartford's findings were "wrong" as that term is defined above.  In conducting its review of the decision, the Court must confine itself to those facts that were available to Hartford at the time of its final decision.  *See, e.g., Jett*, 890 F.2d at 1169. Hartford states that between October 18, 2004, and November 8, 2004,[3] it repeatedly advised Plaintiff that it could not evaluate her claim for benefits unless she, or her physician, supplied medical records and treatment notes which demonstrated her inability to perform the material and substantial duties of her job. (Doc. 21, p. 18; Doc. 22, Exhibit A, Attachment 2, pp. 34- 37.)  Only after Hartford advised  Plaintiff that it intended to close her file due to her failure to submit the requisite medical information did Dr. Martha Christian, Plaintiff's treating physician, complete and return an Attending Physician's Statement, in which she stated that Plaintiff suffered from

---

[3]Hartford's Brief (Doc. 21, p. 18) provides October 18, 2005, and November 8, 2005, as the dates applicable to this claim.  The Court assumes that Hartford intended the dates to include "2004" as the current cause of action was filed in the Circuit Court of Fayette County, Alabama, on January 18, 2005.  (Doc. 1.)

osteoarthritis of the right hip and degenerative changes in the lumbar spine and left knee.  *Id.*  Dr. Christian also included in the statement that she referred Plaintiff to Dr. William Sudduth, an orthopedic specialist, for further evaluation.  *Id.* (*See also* Doc. 22, Exhibit 1, Attachment 2, pp. 91-92.)

Even though Hartford had a difficult time receiving the medical documentation that it requested, it chose to approve Plaintiff's application for short-term disability benefits from November 3, 2004, through November 10, 2004.[4]  (Doc. 22, Exhibit A, Attachment 2, p. 40.)  On December 7, 2004, Plaintiff's treating physician submitted a Statement of Continued Disability wherein she opined that Plaintiff should not engage in prolonged standing for over five minutes and that her walking should be limited.  (Doc. 22, Exhibit A, Attachment 2, p. 89.)  The statement reiterated that Plaintiff was referred to Dr. Sudduth, the orthopedic specialist.  *Id.*

---

[4]Although Defendant states in its brief that the benefits were approved from October 27, 2004, through November 10, 2004, the evidence to which it cites for support for this proposition states very clearly that the claim was effective November 3, 2004. (Doc. 22, Exhibit A, Attachment 2, p. 40.)

The Plan clearly states that Hartford requires written proof of a claimant's disability, and it reserves the right to require further written proof that a claimant remains disabled after benefits have been paid out. (Doc. 22, Exhibit A, Attachment 2, p. 11.)   On December 18, 2004, Defendant sent a letter to Ms. Shackelford informing her that benefits would not be extended because she failed to submit adequate medical information documenting her disability beyond November 10, 2004.  (Doc. 22, Exhibit A, Attachment 2, pp. 41-42.)   In the letter, Hartford made it clear that it required the following information before it could make a determination of Plaintiff's claim: office visit notes, test/lab results, exam findings, and orthopedic consultation notes dated October 18, 2004, through the present. *Id.*   While Plaintiff eventually responded with treatment notes from Dr. Christian, she did not provide any documentation from Dr. Sudduth, her orthopedist.  Hartford avers that this is because Dr. Sudduth's opinion would not have been favorable to Ms. Shackelford's position.  In her notes, Dr. Christian states: "explained to [Plaintiff] that I feel it would be more appropriate for [the orthopedist] to make a decision about return to work

rather than [primary] care since she is actively under ortho care." (Doc. 22, Exhibit A, Attachment 2, p. 64.)

Hartford did not have the benefit of any documentation from the orthopedic specialist that was treating Plaintiff for the impairments which form the basis of her claim for disability benefits. In a case with facts similar to the case at hand, the district court held that the disability insurer's decision was not "wrong" because the plaintiff failed to provide adequate proof of continued disability. *Grayer v. Liberty Life Assurance Company of Boston*, 331 F. Supp. 2d 1383, 1390 (M.D. Fla. 2004), *aff'd*, 144 Fed. Appx. 760 (11th Cir. 2005). In *Grayer*, the court held that one doctor's note within a one year period that did not identify any limitations on the plaintiff was not sufficient proof of disability. *Id.* at 1390-91. While Hartford, unlike the insurer in *Grayer*, did have the treatment notes of Ms. Shackelford's treating physician, those notes only contained one statement regarding her visits with the orthopedic specialist, Dr. Sudduth. Dr. Christian states in her notes that Ms. Shackelford told her that Dr. Sudduth has not put her on rest, but just told her to walk. (Doc. 22, Exhibit A, Attachment 2, p. 64.)

It is clear from the record that Hartford repeatedly requested documentation from Ms. Shackelford which would prove that she continued to be disabled.  In fact, the record shows several requests by Hartford, through both letters and telephone calls, that Plaintiff provide medical documentation from her orthopedist in order for her to receive continued disability benefits.   (Doc. 22, Exhibit A, Attachment 2.)   Instead of complying with Hartford's request, which is contemplated by the Plan, Plaintiff chose to rely solely upon her own subjective complaints of pain and the treatment notes from her physician.  Dr. Christian's only limitations on Plaintiff was that she should not engage in prolonged standing or walking and that she would require occasional breaks from sitting.  (Doc. 22, Exhibit A, Attachment 2, p. 92.)  She specifically chose not to address whether Plaintiff could lift, carry, reach, work overhead, push, pull, drive, or use a keyboard or engage in other repetitive hand motions.  *Id.*

Based upon the evidence before Hartford at the time of the denial of benefits, this Court cannot say that its decision was "wrong."  To deny benefits to a claimant who refuses to comply with requests that she prove that she continues to suffer from the alleged impairment is a reasonable use

of the discretion afforded to the claims administrator by the Plan.  Even if

this Court held that the ultimate decision reached by Hartford was "wrong,"

it cannot say that the decision was unreasonable as contemplated by the

arbitrary and capricious standard of review.[5]  The Eleventh Circuit has held

that it "cannot over emphasize the importance of the discretion afforded a

claims administrator; the underlying premise of arbitrary and capricious,

rather than *de novo*, review is that a court defers to the discretion afforded

the claims administrator under the terms of the plan."  *HCA,* 240 F.3d at

994.

V.     Conclusion.

For the reasons stated above, Defendant's Motion for Summary

Judgment is due to be granted in all respects.  A separate order in

conformity with this opinion will be entered.

---

[5]Under the heightened arbitrary and capricious standard of review, Hartford's decision would still not be overturned.  Requiring claimants to provide documentation of their disabilities advances the interests of all class participants and beneficiaries by reducing the chances that a fraudulent claim may be paid.  Without documentation from a patient's treating physician who is responsible for treating the claimant for the disability that forms the basis of the claim, an insurer would be required to pay virtually all claims.  While Dr. Christian, as the primary care physician, supplied her notes to Defendant, Dr. Sudduth, the orthopedist, did not.  Hartford was simply requesting proof from the specialist that Plaintiff actually suffered from the disability such that she would be entitled to benefits under the Plan.

Done this <u>28th</u> day of <u>March 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153